# IN THE COURT OF APPEALS OF IOWA

No. 17-0839
Filed October 10, 2018

**COLBY RAY PUCKETT,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Mills County, James M. Richardson,

Judge.

Colby Puckett appeals the denial of his application for postconviction relief.

**AFFIRMED.**

Marti D. Nerenstone, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Kevin Cmelik, Israel J. Kodiaga,

and Kelli A. Huser (until withdrawal), Assistant Attorneys General, for appellee

State.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

Colby Puckett appeals the denial of his application for postconviction relief (PCR).  Because Puckett's plea was knowingly and voluntarily entered and he has failed meet his burden to show plea counsel was ineffective, the district court did not err in denying his application.

**I. Background Facts and Proceedings.**

Puckett pled guilty to second-degree murder.  On appeal, this court rejected his contention that plea counsel was ineffective in allowing him to plead guilty to a charge without an adequate basis, noting the record was sufficient to support an inference of malice aforethought.  *State v. Puckett*, No. 14-0250, 2015 WL 3884870, at *4 (Iowa Ct. App. June 24, 2015).  The supreme court denied further review on August 27, 2015.

Puckett then filed a PCR application, claiming plea counsel provided ineffective assistance and he did not enter a voluntary and intelligent guilty plea.  At the PCR trial, Puckett continued to challenge his plea of guilty, arguing he did not have "malice aforethought."  Puckett testified,

> I mean, now I know a lot more than what I did upon being able to research here in prison, but during the time I didn't know or understand all the facts surrounding the second-degree murder plea or the first-degree murder for that matter. I felt like I was doing the right thing at the time, you know, doing what my—I was supposed to listen to my attorney; you know, he was supposed to guide me in the right way.  Had I known then what I know now, I don't think I would have accepted the plea.
>      Q. And what did you discover that changed your mind?  A. The malice aforethought issue, just the fact that in order for a second-degree conviction to stand there has to be proof of intent, which is malice aforethought.  I told my attorney numerous times that I never intended to hurt her.  He met with the judge and came out and told me that that's what I had to say, which is why I said it.
>      . . . .

Q. Bottom line for malice aforethought, though, the judge told you during the hearing that it meant that—even if you did not intend to kill the child, you did intend to cause some harm to the child, is that right? A. Correct.

. . . .

Q. Do you recall the acts themselves? A. Yes.

Q. What would any person believe would happen to the child given what you did to her? A. It would probably be hurt somehow.

. . . .

Q. But do you understand that there's a difference between wishing you hadn't done it and knowing that what you're doing could seriously injure a child? A. Do I understand that?

Q. Yeah. A. Yes.

Q. And when you were in the act of shaking a child, you knew that it could seriously injure that child? A. Correct.

Q. Did you ever tell Mr. Murphy, I'm not taking that plea, I want my trial? A. No.

Additional testimony and exhibits were admitted at trial. Puckett's motion to amend his PCR was granted.[1] Before the end of the trial, the PCR court directly addressed Puckett at the trial, stating:

THE COURT: Okay. So we're talking about (1) your trial counsel, Mr. [Michael] Murphy, had some sort of discussion that your—in chambers; (2) that Mr. Murphy did not challenge your competency at the time of the plea taking; and (3) that Murphy did

---

[1] The motion to amend asserted "depositions have clarified the issues" of ineffective assistance of plea counsel, stating Murphy was ineffective:

(a) By failing to have the applicant receive a mental health evaluation or obtain medical records pertaining to his mental capacity;

(b) By failing to explain to the applicant all of the legal issues pertaining to Count I of the Trial Information;

(c) By allowing the defendant to participate in a plea without assuring that he was doing so knowingly, voluntarily and intelligently;

(d) By inadequately explaining to the applicant the lesser included crimes of the charges set out in the Trial Information;

(e) By putting undue pressure on the applicant by telling him that he (Murphy) had a reputation to keep and that's why trial should be avoided;

(f) By not properly preparing for trial; and

(g) By failing to file a motion to suppress the defendant's video taped statement that occurred on or about February 2, 2013 wherein the defendant not only admitted to shaking the baby but demonstrated it on camera.

not adequately investigate your case. Am I correct that those three areas are what we're here today about?

    [PUCKETT]: Yes, Your Honor.

In its written ruling, the PCR court outlined the issues presented:

> The criminal element of "malice aforethought" contained in 2nd degree murder is the primary basis of Puckett's claim of ineffective assistance of trial counsel. That issue has been addressed by the Iowa Court of Appeals and will not be further addressed by this Court. As set forth above, Puckett alleges that his trial counsel Murphy was ineffective in three areas. First, Puckett alleges Murphy failed to challenge his competency because of his [attention deficit and hyperactivity disorder (ADHD)] and bipolar disorder. Puckett also alleges that Murphy was ineffective in failing to adequately investigate. This second issue is primarily based on the fact that Murphy did not formally file pleadings to suppress Puckett's voluntary interview with [department of criminal investigation] agent Myers. Lastly, Puckett urges that a conflict of interest existed because of an in-chamber communication between Murphy and Judge Heckerman.

The PCR court found Puckett's plea was made knowingly and voluntarily and his plea counsel was not ineffective. Puckett now appeals.

## II. Scope and Standard of Review.

Generally, we review the court's denial of a PCR application for correction of errors at law. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012). "However, when the applicant asserts claims of a constitutional nature, our review is de novo. Thus, we review claims of ineffective assistance of counsel de novo." *Id.* (citation omitted).

## III. Discussion.

"To prevail on a claim of ineffective assistance of counsel, a claimant must satisfy the *Strickland* [*v. Washington*, 466 U.S. 668, 687 (1984),] test by showing '(1) counsel failed to perform an essential duty; and (2) prejudice resulted.'" *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012) (citation omitted). The claimant must

make a showing of both elements to establish ineffective assistance of counsel. *Id.* A claim of ineffective assistance of counsel arising from a failure to file a pretrial motion to suppress can survive the entry of a guilty plea only if counsel fails to provide competent advice leading up to the plea and the plea is then involuntary and unintelligent. *State v. Carroll*, 767 N.W.2d 638, 643-44 (Iowa 2009).

*A. Motion to suppress.* First, Puckett asserts plea counsel was ineffective in failing to file a motion to suppress his confession, contending he was in custody and received no *Miranda*[2] warnings. Puckett maintains that he was in custody at the time he gave his statement to police, he was not read his *Miranda* warnings, and the police denied entry to his lawyer who arrived at the station while Puckett was giving his statement. Puckett acknowledges he was not under arrest when he gave his statement but contends other circumstances suggest his freedom was restrained—"the interrogation room door was locked, and Mr. Puckett was not free to leave or consult with Mr. Murphy, then he clearly was in custody." *See State v. Schlitter*, 881 N.W.2d 380, 395 (Iowa 2016) (stating one is in custody for *Miranda* purposes "upon formal arrest or under *any other circumstances* where the suspect is deprived of his or her freedom of action in *any* significant way" (quoting *State v. Ortiz*, 766 N.W.2d 244, 251 (Iowa 2009)).

Our de novo review of the record supports a finding his plea counsel breached no duty in determining Puckett's statement was given voluntarily and a motion to suppress would likely have failed. Puckett testified he went voluntarily to the sheriff's office and was not in custody. He testified he knew he was free to

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 473 (1966).

leave. He acknowledged he was told he could have an attorney present and he chose to proceed. When Murphy (who asserted he had not yet be retained but was called by Puckett's mother and informed that Puckett had gone to the sheriff's office to give his side of the story) arrived at the sheriff's office, Puckett was aware of his presence and waved him away from the room. The PCR court specifically found the statement was voluntary and that the voluntariness of Puckett's confession "is not an issue." We agree. *See State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013) ("To establish that his trial counsel breached a duty, [the applicant] has to show the attorney's performance fell below the standard of a 'reasonably competent attorney.' 'We will not find counsel incompetent for failing to pursue a meritless issue.'" (citations omitted)).

*B. Plea negotiation.* Puckett next contends that "if there was going to be a plea, it would have been more appropriate for Attorney Murphy to advocate for a plea to [child endangerment resulting in death], or any of the many potential lesser included offenses." Unfortunately for Puckett, a defense attorney is not in control of the plea negotiations (which the PCR court noted). "It was in the discretion of the prosecutor to request the charge." *See State v. Alvarado*, 875 N.W.2d 713, 718 (Iowa 2016) ("Overlap only prevents double convictions or double punishments, not a single conviction on one charge based on the *prosecutor's charging discretion*." (emphasis added)).

*C. Knowing and voluntary plea.* Puckett argues the plea court and defense counsel asserted pressure upon him to use specific words at the plea hearing. *See Puckett*, 2015 WL 3884870 at *1-2 (setting out the colloquy). He states, "The trial judge required Mr. Puckett to say that he intended to hurt the child." Reluctance

on Puckett's part does not equate with involuntariness. *See State v. Speed*, 573 N.W.2d 594, 597 (Iowa 1998) ("Lawyers and other professional[s] often persuade clients to act upon advice which is unwillingly or reluctantly accepted. And the fact that such advice is unwillingly or reluctantly acted upon is not a '. . . factor overreaching defendant's free and clear judgment' of what should be done to find a means to alleviate the situation with respect to which the client seeks advice." (citations omitted)). The law does not require a defendant act "of his own free will," but rather, a defendant "may elect to plead guilty to a lesser offense when he is also charged with a more serious offense" and his plea will not be considered coerced. *Id.* (quoting *State v. Lindsey*, 171 N.W.2d 859, 865 (Iowa 1969)).

Puckett also asserts plea counsel did not adequately investigate his mental health and its potential effects on his actions.

> [T]he distinction between ineffective-assistance-of-counsel claims that do not survive a guilty plea as illustrated in *Speed* and those that do survive is the existence of a showing that the pre-plea ineffective assistance of counsel rendered the plea involuntary or unintelligent. The component of the claim involving the voluntariness of the plea is largely tied to the prejudice element of all ineffective-assistance-of-counsel claims. *Id.* This element means criminal defendants who seek postconviction relief after pleading guilty must establish the guilty plea would not have been entered but for the breach of duty by counsel. *Id.* Thus, when a postconviction relief claim following a guilty plea is properly alleged, a case-by-case analysis is necessary "to determine whether counsel in a particular case breached a duty in advance of a guilty plea, and whether any such breach rendered the defendant's plea unintelligent or involuntary." *Id.*

*Castro v. State*, 795 N.W.2d 789, 793 (Iowa 2011).

With respect to his assertion that plea counsel did not adequately investigate the case, Puckett complains that counsel did not seek his medical records or explore a defense based on his former diagnoses of ADHD or bipolar

disorder. The PCR court found the defenses Puckett had available "were not likely to be successful at trial," which leads to a conclusion Puckett suffered no prejudice. Moreover, Puckett "must establish the guilty plea would not have been entered but for" counsel's failure to obtain his medical records. *Id.* Puckett testified, "Had I known then what I know now, I don't think I would have accepted the plea."

The court observed:

> Puckett's mother acknowledged his guilt as to [charge of child endangerment resulting in death] and only questioned Count I as amended [second-degree murder]. Her testimony establishes that she believed he was capable of pleading guilty to a charge . . . . On the facts presented, this court concludes that Puckett was competent to voluntarily enter a plea of guilt on November 25, 2013. Puckett's mental condition did not prevent him from knowingly and understandingly entering his plea of guilty.

The PCR court also rejected any challenge to the in-chambers discussion between the district court and counsel prior to the plea taking because the conversations were disclosed to Puckett during the plea proceeding. The PCR court found,

> No showing of a conflict has been offered by Puckett. Rather, the chambers discussion was repeated in open court before Puckett. The chambers conversation was centered on the elements of the crime as were the statements in open court. Certainly, Puckett understood his plea to be for the benefit of the bargain.

Upon our de novo review of the record, we agree with the district court that Puckett knowingly and voluntarily entered his guilty plea. We adopt the court's statement:

> This court specifically finds that Puckett wishes to re-litigate the element of malice of aforethought. He refuses to acknowledge that intent can be inferred from actions. . . . It was in the discretion of the prosecutor to request the [second-degree murder] charge subject to the 70% requirement. Defense counsel, due to Puckett's confession, was at the mercy of the prosecutor. Puckett's plea

pursuant to the plea bargain was the best result Puckett could obtain under the circumstances. Puckett at this time suffers from "buyer's remorse" and wishes he could have obtained a better bargain.

*D. Other claims.* Puckett also contends the PCR court failed to address additional claims raised in his amended application. He states, "The PCR court did not make such specific findings and conclusions [required by Iowa Rule of Civil Procedure 1.904(a)], but lumped many issues together. We conclude the court adequately addressed each of the issues raised.[3] Moreover, the failure of a court to provide specific findings and conclusions does not alone give cause for relief but does preserve error on the issues so the appellate court may review the merits of the issues. *See Lemasters*, 821 N.W.2d at 862-66 (stating a rule 1.904 motion preserves error so the merits of the issue may be determined on appeal). Even if we were to conclude the issues were not adequately addressed, Puckett has neither provided authority for the grant of relief on the basis of inadequate reasons nor argument why any of the three issues have merit. *See State v Short*, 851 N.W.2d 474, 479 (Iowa 2014) ("We need not consider the extent to which these arguments may have had merit, as under our rules and our precedents they have been waived in this appeal." (citing Iowa R. App. P. 6.903(2)(g)(3))); *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005) ("In the absence of an argument on these allegations [on appeal], we deem them waived."); *Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) (confining consideration to issues raised on appeal);

---

[3] In fact, the court granted a hearing on Puckett's rule 1.904(a) motion, and three issues were raised to the court. One of the issues the court considered irrelevant, and the court believed the other two issues were adequately addressed in its original ruling. The three issues were (1) whether defense counsel stated to Puckett "I have a reputation to keep" (found to be irrelevant), (2) the plea was not entered knowingly and voluntarily, and (3) whether defense counsel was required to inform Puckett of all lesser-included offenses of the original charge.

*Richardson v. Neppl*, 182 N.W.2d 384, 390 (Iowa 1970) ("A proposition neither assigned nor argued presents no question and need not be considered by us on review."). Thus, we find no relief can be granted upon the additional claims in the amended application.

Finally, Puckett asserts plea counsel's performance was so deficient as to constitute structural error. *See generally Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011). Puckett did not raise the issue of structural error below, and we therefore will not address the claim on appeal. *See Lee v. State*, 844 N.W.2d 668, 676-77 (Iowa 2014) ("As a general proposition, 'issues must be raised in the district court before we may review them on appeal.'" (citation omitted)). Nor has Puckett shown plea counsel's performance was constitutionally deficient.

Having failed to establish plea counsel was ineffective, we affirm the denial of the PCR application.

**AFFIRMED.**